UNITED STATES of America, Appellee,

v.

Billy H. HARTNESS and Brenda K.
Keener, Appellants.

No. 87–1835.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 15, 1988.

Decided April 15, 1988.

Rehearing and Rehearing En Banc
Denied June 13, 1988.

Charles S. Gibson, Dermott, Ark., for appellants.

Sandra Cherry, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

On April 1, 1987 Billy Hartness and Brenda Keener were found guilty in the district court[1] of conspiracy to defraud the United States in violation of U.S.C. 18 § 371 (1982).[2] Hartness was also found guilty of one count and Keener of two counts of filing false documents with the government, all in violation of 18 U.S.C. § 1001 (1982).[3] We affirm.

I. BACKGROUND

At all relevant times Billy Hartness was a building contractor involved in the construction of single family dwellings in Monticello, Arkansas and the surrounding area. Brenda Keener was a certified public accountant employed by Hartness and the operator of Keener Realty, a realty company operating out of the Hartness Building Supply office.

Many of the homes built by Hartness were purchased by individuals receiving assistance from the Farmers Home Administration Rural Housing Program. Pursuant to this program FmHA provides low interest loans to qualified individuals to enable them to purchase homes.

At issue in this appeal are the actions of Hartness and Keener in connection with a loan application filed by Michael Ray Grubb and his wife Deedra Grubb. Grubb was a part-time bookkeeper for Hartness from January 1983 to February 1985 while attending college full-time. During the summers when school was not in session Grubb worked full-time for Hartness.

Shortly before getting married, Grubb became interested in purchasing a home from Hartness. Grubb's original application for FmHA assistance was filled out by Keener and presented to Grubb for his signature. The application stated that Grubb worked forty hours per week, fifty-two weeks per year, and earned $3.45 per hour for an annual total of $7,176. Grubb's status as a full-time student was not mentioned on the application.

After the loan application was submitted Hartness signed three separate Verification of Employment forms (VOEs). On the first form, dated March 8, 1984, Grubb's base pay to date, past year income, and hours per week were incorrectly reported. The second VOE, dated July 2, 1984, reported an increase in Grubb's hourly wages to $3.90 per hour and continued to report full-time employment status. At about this time Keener told Grubb that his wife should not seek employment until after closing on the house because a large increase in income would result in denial of their application.

---

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas.

2. 18 U.S.C. § 371 provides:
   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
   If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

3. 18 U.S.C. § 1001 provides:
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

On August 21, 1984, the final VOE was signed by Hartness reporting that Grubb was earning $4.25 per hour, forty-three and one-half hours per week, fifty-two weeks per year. Grubb's past year income was reported to be $8,211 and his expected income for the following year was reported to be approximately $10,000. At trial Grubb testified that on the date of the final VOE he was earning less than $4.25 per hour, was not working full-time year-round, and had not earned $8,211 the previous year. Grubb testified that due to his marriage the figures reported on the second VOE would not have qualified him for a loan, so the figures were increased. Grubb further testified that he and Keener went over all the figures "to make it work." When asked whether he planned to make $10,000 the following year, Grubb responded, "Not unless I got a nice raise."

Appellants were charged in a multi-count indictment with one count of conspiring to defraud the government and numerous counts of submitting false statements to the government. Keener was convicted on the conspiracy count, on Count VI dealing with the Grubb application, and on Count X which is not relevant to this appeal. Hartness was convicted on the conspiracy count as well as on Count V dealing with the Grubb VOE.

## II. DISCUSSION

█ Appellants' first argument is that Counts V and VI of the indictment failed to state an offense and therefore should have been dismissed by the district court.

Count V charged:

On or about March 7, 1984, in the Eastern District of Arkansas, the defendant, Brenda K. Keener, in a matter within the jurisdiction of the Farmers Home Administration, an agency of the Department of Agriculture of the United States, did willfully and knowingly use and cause to be used a false writing and document containing a materially false, fictitious and fraudulent statement, knowing the same to contain such a statement, in that in an Application for Rural Housing Assistance submitted to the Farmers Home

Administration the defendant stated and represented that the annual income of Michael Ray Grubb was $7,176 whereas in truth and in fact, as the defendant then knew, the annual income of Michael Ray Grubb was less than that amount, all in violation of Section 1001 of Title 18 of the United States Code.

Keener argues that Count V fails to state an offense because it is legally impossible to falsify a projection of future events. Annual income is defined as "any income planned to be received in the coming year by the applicant or a member of his household." *Johnson v. Department of Agric.*, 734 F.2d 774, 776 (11th Cir.1984). *See also* 7 C.F.R. §§ 1944.8(c)(2) and (c)(3) (1984). FmHA employees testified that annual income is an estimate of projected income based upon current income and events expected to occur in the future.

Taken to its logical conclusion, Keener's argument would allow her to falsify with impunity the statement of annual income on every loan application she assists in filling out. Since it was merely a guess, could Keener have legally estimated Grubb's income to be $1 million. We think not.

Granted, a statement of future earnings need not be made with the same degree of precision required of a statement of past earnings. No one can be prosecuted for failing to accurately predict the future. At the same time, however, one who cavalierly adjusts her prediction to suit her needs can not seek shelter behind the definition of income and argue that an estimate can not be false. Based on the facts in existence on the date of the application, Keener's statement of Grubb's projected annual income was false and was known by Keener to be false. The projection was based on full-time employment when Keener, Grubb's immediate supervisor, knew that Grubb worked only part-time and attended college full-time. In support of her argument Keener cites *United States v. Vesaas*, 586 F.2d 101 (8th Cir.1978), in which a conviction under 18 U.S.C. § 1001 was reversed because the allegedly false statement was literally and factually correct.

Since it is legally impossible to hold stock in joint tenancy with a decedent, a statement denying such ownership can not be the subject of prosecution under § 1001, the court held. We fail to see the relevance of *Vesaas* to the present case. It is not legally impossible to falsify annual income even though it is a projection because criteria are provided from which to make the projection. *See* 7 C.F.R. § 1944.8(c). Putting false information into the equation necessarily leads to a false projection. Consistent with Keener's argument, if we take into account the definition of income, Count V of the indictment charged that Keener "stated and represented that the [projected] annual income of Michael Ray Grubb was $7,176 whereas in truth and in fact, as the defendant then knew, the [projected] annual income of Michael Ray Grubb was less than that amount." We believe this language states an offense.

Count VI, which is challenged by Hartness, charged:

> On or about August 21, 1984, in the Eastern District of Arkansas, the defendants, Billy Horace Hartness and Brenda K. Keener, in a matter within the jurisdiction of the Farmers Home Administration, an agency of the Department of Agriculture of the United States, did willfully and knowingly use and cause to be used a false writing and document containing a materially false, fictitious and fraudulent statement, knowing the same to contain such a statement, in that in a Verification of Employment submitted to the Farmers Home Administration the defendants stated and represented that Michael R. Grubb was employed by Billy Hartness Building Supply earning $10,000 per year whereas in truth and in fact, as the defendants then knew, Michael R. Grubb earned $7,370, all in violation of Sections 1001 and 2 of Title 18 of the United States Code.

Hartness argues that Count VI fails to state an offense because it was premised on a false estimate of future earnings.

For the reasons previously discussed, we believe that Count VI states an offense.

Appellants next argue that the district court erred in denying their motions for judgment of acquittal based on insufficiency of the evidence. When reviewing the sufficiency of the evidence we must give the government the benefit of all reasonable inferences that may be drawn from the evidence. Viewing the evidence in a light most favorable to the government, we will reverse the convictions only if the verdicts are not supported by substantial evidence. *United States v. Casperson*, 773 F.2d 216, 221 (8th Cir.1985).

■ Keener challenges her conviction on Count V on two grounds. First, she argues that the evidence at trial showed that Grubb actually earned in excess of $7,176 in the twelve months following the loan application. Therefore, because her statement of Grubb's income was correct, she should have been acquitted. We disagree. The correct test is whether the statement of income was false when made. Subsequent events are relevant only to the extent that they were foreseeable on the day the loan application was completed. After carefully reviewing the record we believe that sufficient evidence was given to the jury to support the verdict. One need only review Grubb's testimony to find sufficient evidence that Keener knowingly falsified Grubb's income.

■ Second, Keener argues that the statement of annual income was not material because FmHA personnel testified that they do not rely on the statement when determining loan eligibility. They rely on the statement of income appearing on the VOE, Keener argues. Actual reliance is not an element of materiality, however. The test is whether the statement was capable of or had a natural tendency to influence the FmHA. *See Blake v. United States*, 323 F.2d 245, 246–47 (8th Cir.1963). Certainly a statement of income on a loan application is capable of influencing the officials empowered to approve or disapprove the loan.[4]

---

4. Appellants further argue that the district court erred in failing to submit to the jury the issue

whether the false statements made by appellants were material. Appellants concede that in most

Hartness challenges his conviction on similar grounds. First, he argues that applying the definition of annual income found in the FmHA regulations, Grubb's annual income was in excess of $12,000. Annual income is defined as current monthly income times twelve. 7 C.F.R. § 1944.2(c). In the thirty days preceding August 21, 1984, the date of the third VOE, Grubb earned $1049.46, due in large part to fifty-eight hours overtime worth $369.46. We are not persuaded by Hartness' overly technical argument. Common sense dictates that an abberational month should not be used to determine annual income. Hartness could not possibly have believed that Grubb would work fifty-eight hours of overtime each month over the course of the upcoming year while also attending college full-time.

Further, Hartness fails to take into account the specific regulations dealing with overtime. Title 7 C.F.R. § 1944.8(c)(2) and (c)(3) provide that annual income consists of current monthly income times twelve plus the estimated amount of overtime for the ensuing twelve months. Hartness' method of computing annual income completely distorts these regulations. It was abundantly clear at the time the VOE was completed that the preceding thirty day period was not indicative of the ensuing twelve months. We are not dealing with a projection which, because of unforeseen events, ultimately turned out to be inaccurate. To the contrary, this case involves a conscious decision by Hartness to knowingly overestimate Grubb's annual income so that Grubb could qualify for a loan. The fact that Hartness prefaced $10,000 with the word "approximately" does not alter our opinion on the matter.[5]

■ We find no merit in appellants' next argument that due process was violated when the jury was provided with the indictment during its deliberations. The jury was properly admonished not to consider the indictment as evidence. The district court did not abuse its discretion. *See United States v. Wagoner*, 713 F.2d 1371, 1377–78 (8th Cir.1983).

■ Next, appellants argue that the indictments for violating 18 U.S.C. § 1001 should have been dismissed because § 1001 is preempted by 18 U.S.C. § 1014 which deals specifically with FmHA loan applications. In support, appellants cite *United States v. Rose*, 570 F.2d 1358, 1363 (9th Cir.1978), and argue that the court therein interpreted 18 U.S.C. § 1001 to only reach false statements not specifically covered by other statutes. We read *Rose* differently, however. The appellant in *Rose* argued that he could not be convicted of violating both 18 U.S.C. § 1001 and 18 U.S.C. § 542 (importing merchandise into the United States by means of false statements). The court agreed, holding that because the convictions were redundant—there had been only one illegal act—appellant could not be convicted for violating both statutes.

*Rose* does not stand for the proposition that § 1001 is preempted by other, more specific false statement statutes. It merely affirms the fundamental rule of criminal law that whether a single act can result in prosecution under two or more statutes depends on whether each statute requires proof of an element which the others do not. Because Hartness and Keener were only convicted of violating § 1001, *Rose* is inapplicable.

The rule in this circuit is clear that "prosecution under section 1001 is permissible even in view of other overlapping and more specific false statements statutes." *United States v. Gordon*, 548 F.2d 743, 744 (8th Cir.1977). "[W]hen an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of

---

cases materiality is a question of law for the trial judge to decide but argue that in some cases, such as this, the issue is better left to the jury. We are not persuaded that we should deviate from the general rule in this circuit that materiality is a question of law. *See United States v. Brown*, 763 F.2d 984, 993 (8th Cir.),

*cert. denied,* 474 U.S. 905, 106 S.Ct. 273, 88 L.Ed.2d 234 (1985).

5. We need not consider appellants' argument that their conspiracy convictions must be vacated because their argument was premised on our reversing the substantive convictions.

defendants." *United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979). The government had the discretion to prosecute Hartness and Keener under either 18 U.S.C. § 1001 or 18 U.S.C. § 1014 and we will not disturb that choice.

■ Finally, Hartness argues that the district court erroneously fined him $50,000 on the conspiracy count because 18 U.S.C. § 371 sets forth a maximum fine of $10,-000. The district court based the fine on 18 U.S.C. § 3623 (Supp. III 1985) which allows fines of up to $250,000 for offenses occurring after December 31, 1984. Hartness argues that § 3623 is inapplicable because the conspiracy did not occur after December 31, 1984. We disagree. Hartness was charged and convicted of a conspiracy beginning on or about January 5, 1983 and continuing through December 9, 1986, the date of the indictment. Thirty overt acts performed after December 31, 1984 were charged and submitted to the jury. Consequently, the district court was within its discretion when fining Hartness $50,000.

III. CONCLUSION

For the above reasons appellants' convictions are affirmed.